[No 2321. Decided October 2, 1896.]

## A. V. FAWCETT v. THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR PIERCE COUNTY.

QUO WARRANTO — JUDGMENT OF OUSTER — EFFECT OF APPEAL — CONTEMPT.

The filing of a supersedeas bond under Laws 1893, p. 123, § 7, has the effect only of staying proceedings on the judgment, but does not operate to suspend or destroy the force and effect of the judgment itself. (HOYT, C. J., dissents.)

A judgment of ouster in a proceeding in the nature of *quo warranto* divests the person ousted of all official authority whatever, and fully and completely excludes him from the office as long as the judgment remains in force.

A judgment in favor of a relator in a proceeding by information to try the title to a public office is, from its very nature, self-executing, and, without the aid of process or further action of the court, it accomplishes the object sought to be attained, so that there is nothing upon which a stay bond can operate, except an execution for costs. (HOYT, C. J., dissents.)

Where one excluded from office by judgment of ouster refuses to yield possession on the ground that he has appealed from the judgment and filed a stay bond, and proceedings for contempt are instituted against him, he is not entitled to a writ of prohibition to restrain the court from further proceeding to punish him for contempt, inasmuch as he has a remedy by appeal from any judgment of conviction that may be rendered against him, and such proceeding for contempt is not for the purpose of enforcing the judgment of ouster, but is an independent proceeding to compel obedience to a lawful order of the superior court. (HOYT, C. J., dissents.)

*Original Application for Prohibition.*

*Hugh Farley*, for relator.

*Murray & Christian*, and *J. S. Whitehouse*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—At a municipal election held in the

city of Tacoma on the 7th day of April, 1896, the re-
lator herein and one Edward S. Orr were opposing
candidates for the office of mayor.   Having received
and canvassed the returns of the election, the city
council determined and declared that Mr. Fawcett had
received the highest number of votes cast for the
office of mayor, and that he was entitled to the office,
and thereupon caused a certificate of election to be
issued and delivered to him.   He thereupon entered
upon the duties of the office and took possession of
the books, papers and property belonging thereto.
Soon thereafter Mr. Orr, claiming to have been elected
notwithstanding the determination of the council to
the contrary, filed an information in the nature of a
*quo warranto* in the superior court of Pierce county to
test the title to said office.   Upon the trial of the
issues presented by the pleadings in that proceeding
it was adjudged that the relator Orr was entitled to
the office, and a judgment of ouster was entered and
the defendant, Fawcett, was ordered to deliver over all
books, papers and property belonging to the same.
Defendant Fawcett thereupon gave notice of an ap-
peal to this court and, in due time, filed his appeal
bond, after which he requested the judge of said court
to fix the amount of a bond to stay proceedings on the
judgment, which request the judge complied with, but
distinctly ruled that he would not determine the effect
of such bond, and that he would not make any ruling
or decision as to the status of the parties or the litiga-
tion in case such bond should be given.   Thereafter,
Mr. Fawcett filed a bond in the sum designated by the
court, and conditioned in accordance with the provi-
sions of the statute.   Subsequently Mr. Orr demanded
possession of the office and of the property belonging
thereto.   Said demand was refused and said Fawcett

retained the possession of said office and said property, and continued to use and exercise the rights and privileges and to perform the duties appertaining to said office.   The making of said demand, and the refusal thereof, was brought to the attention and knowledge of the judge of the superior court by complaint and affidavits, and such proceedings were had thereon that said Fawcett was ordered to show cause why he should not be arrested to answer for contempt for disobedience of the lawful order and judgment of said court.   At this stage of the proceedings, said Fawcett caused to be issued out of this court an alternative writ of prohibition directed to said superior court and to W. H. Pritchard, judge thereof, requiring and commanding it and him to show cause why they should not be prohibited and restrained from further proceeding to punish said Fawcett for said alleged contempt of court.

The position of the relator herein seems to be that the bond which was filed in the *quo warranto* proceeding not only stays the proceedings but suspends the judgment of ouster, so that he may, pending the appeal, continue to exercise the functions of the office from which the judgment, by its terms, expressly excluded him.   On the other hand, the respondent contends that a bond to stay proceedings, conditioned as required by law, will not stay or suspend a judgment rendered in a proceeding upon an information in the nature of a *quo warranto* to determine the title to a public office.   Which one of these propositions is correct, is the first question for our determination.

Our statute (Laws 1893, p. 123, § 7) provides that,—

"An appeal shall not stay proceedings on the judgment or order appealed from or on any part thereof, unless the original or a subsequent appeal bond be

further conditioned that the appellant will satisfy and perform the judgment or order appealed from in case it shall be affirmed, and any judgment or order which the supreme court may render or make, or order to be rendered or made by the superior court, and (where such condition is applicable) shall pay all rents of or damages to property accruing during the pendency of the appeal, out of the possession of which any respondent shall be kept by reason of the appeal."

This provision is quite general and comprehensive in its application, but it will be observed that it only prescribes what shall be the conditions of bonds which must be filed in order to stay proceedings on judgments and orders appealed from, and does not, either directly or by necessary implication, purport to suspend or destroy the force and effect of such judgments or orders. In fact, the only fair and reasonable implication from the language used is that it was the understanding and intention of the legislature that such judgments and orders should remain in force during the pendency of the appeal. The effect, then, of the appeal in the *quo warranto* case, after the statutory stay bond was filed, was to leave the proceedings in the same situation they were in at the time the appeal bond was filed, and the appeal became effectual. *Graves v. Maguire*, 6 Paige, 379; *Clark v. Clark*, 7 Paige, 607; *Burr v. Burr*, 10 Paige, 166; *First National Bank v. Rogers*, 13 Minn. 407 (97 Am. Dec. 239).

If, therefore, the judgment of ouster deprived Mr. Fawcett of the office of mayor, and if such judgment is, as the respondent claims, self-executing, he was not restored to his former official position by the filing of a bond to stay proceedings.

The question then is, what is the effect and nature of a judgment of ouster from a public office. It seems to be the settled rule that such a judgment divests

the person ousted of all official authority whatever, and fully and completely excludes him from the office as long as the judgment remains in force.    High, Extraordinary Legal Remedies (2d ed.), § 756; Mechem, Public Officers, § 497.

And a judgment in favor of a relator in a proceeding by information to try the title to a public office is, from its very nature, self-executing.    By its own force, and without the aid of process or further action of the court, it accomplishes the object sought to be attained.    So far, then, as such a judgment is concerned, there is nothing upon which a stay bond can operate, except an execution for costs, where, as in this case, costs are awarded to the relator.    As soon as the judgment was rendered in favor of Mr. Orr he became the mayor of the city of Tacoma and was entitled, by virtue of § 685 of the Code of Procedure, to proceed to exercise the functions of the office, after qualifying as required by law, unless the judgment was absolutely annulled by the filing of the stay bond. and we are clearly of the opinion, as already intimated, that it was not.

The result of permitting such a judgment to be suspended by an appeal and stay bond would, for obvious reasons, in many instances, in effect, completely destroy the relator's remedy.    If such a result had been intended, or contemplated, by the legislature, they would, we think, have so stated, or at least would have required the filing of a bond by the appellant providing for the payment to the respondent of all damages sustained by reason of being deprived of the office during the pendency of the appeal, as they have done in cases where a respondent is kept out of the possession of property.    The following authorities are in point on the questions here involved: *People v.*

*Stephenson*, 98 Mich. 218 (57 N. W. 115); *State, ex rel. Craig, v. Woodson*, 128 Mo. 497 (31 S. W. 105); *Fylpaa v. Brown County* (S. D.), 62 N. W. 962; *Allen v. Robinson*, 17 Minn. 113; *Jayne v. Drorbaugh*, 63 Iowa, 711 (17 N. W. 433); *State, ex rel. Dodson, v. Meeker*, 19 Neb. 444 (27 N. W. 427); *Walls v. Palmer*, 64 Ind. 493; Elliott, Appellate Procedure, §§ 392–3.

In the case last cited the supreme court of Indiana ruled that a judgment suspending an attorney from practice executed itself, except as to costs, and that the granting of a supersedeas only suspended the right to enforce the collection of costs, and did not allow the attorney to practice pending the appeal. That is an interesting and instructive case, and the principle upon which the decision rests is equally applicable to the case at bar.

In *Jayne v. Drorbaugh, supra,* which was an action upon a supersedeas bond given in a proceeding to test the title to an office, the court held that the plaintiff, who was the successful party, had, under the statute of Iowa, which is almost identical with ours, the right to the possession of the office, and that the judgment was not suspended by the appeal and stay bond. The conditions of the bond in that case were substantially in the language of the bond now under consideration, and in the course of the opinion the court said :

"When it has been determined by the district or circuit court, in a proper proceeding, that a person is entitled to the possession of a civil office to which he claims to have been elected by the people, an appeal to this court should not have the effect to deprive such person of such office, pending the appeal, unless the statute in terms so provides. It is provided by statute that 'an appeal shall not stay proceedings on the judgment,' unless a bond is filed, conditioned as provided by law. Code, § 3186. The bond sued on is thus con-

ditioned. . . . We think, if the intent was that the bond and appeal should have the effect to prevent the plaintiff from taking possession of the office, the statute, in fixing the terms and conditions of the appeal bond would in clear and distinct terms have contained provisions to that effect. It is obvious, however, that it does not do so."

This language, in our judgment, is peculiarly applicable to this case. And, in *People v. Stevenson, supra,* the same rule was announced, under a statute as to stay bonds in terms fully as general as our own.

Nor are the views we have expressed opposed to the decisions of this court in *State, ex rel. Smith, v. Sachs,* 3 Wash. 96 (27 Pac. 1075), and in *State, ex rel. Bank, v. Superior Court,* 12 Wash. 677 (42 Pac. 123). In the first of these cases this court held that the party appealing had a right to file such a bond as the statute provided for, and that it was the duty of the judge of the trial court to fix the amount thereof, as required by law. But we expressly refrained from determining the effect of such bond upon the judgment appealed from. The judgment from which the appeal was taken in that case was final, and the appellant was adjudged to pay the costs, and he therefore had an undoubted right to arrest proceedings for costs at least, and, hence, to file the only bond provided by law for arresting or staying proceedings; and all that was actually decided in the case in 12th Washington, above mentioned, relating to the effect of bonds to stay proceedings, was that the provision of the statute as to such bonds applied to and stayed proceedings on the order then under consideration. The proceeding for contempt was not instituted for the purpose of enforcing the judgment of ouster, for, as we have seen, that judgment was already executed, but to com-

pel obedience to a lawful order of the superior court. It was an independent proceeding in which the state was plaintiff (Code Proc., § 783), and although the judgment appealed from constituted evidence on which the court, in part, acted in making the order now sought to be prohibited, it was not a proceeding *on* the judgment, and hence was not stayed or suspended by the bond which was filed in the original case. *Welch v. Cook*, 7 How. Pr. 282.

And besides, if the relator herein should be found guilty of contempt, as alleged, he can appeal from the judgment of conviction, as in other cases, and have the proceeding reviewed by this court upon the merits.

From the foregoing considerations it follows that the peremptory writ must be denied, and it is so ordered.

SCOTT, DUNBAR and GORDON, JJ., concur.

HOYT, C. J. (*dissenting*).— I am unable to concur in the foregoing opinion, for while I must concede that the conclusions therein seem to be justified by the authorities cited in their support, I cannot free my mind from the opinion which I have long entertained, that it was the intention of the legislature, in providing for appeals from certain judgments and orders, that, except when otherwise expressly provided, the effect of an appeal should be not only to stay any affirmative action by which the judgment appealed from was sought to be enforced, but also to entirely suspend the force of such judgment during the pendency of the appeal. All the legislation upon the subject seems to indicate that such was the intention of the legislature. It has greatly extended the right of appeal and made it apply to

judgments and orders from which no appeal would lie except by virtue of express legislation. In many of these the right of appeal would be of little or no benefit if, during its pendency, the judgment or order appealed from should remain in force. That it has been the object of the legislature to not only thus enlarge the right of appeal but to provide fully for the protection of appellant's rights during its pendency is not disputed; but it is claimed that judgments or orders granting injunctions and judgments of ouster in proceedings in the nature of *quo warranto* are exceptions to the general rule. As to these it is claimed that, notwithstanding an appeal and the offer by the appellant to give a bond that shall amply protect the rights of the respondent, they will not be suspended but will remain in full force so that the appellant will be bound thereby as fully after he has perfected his appeal as before. I can see no sufficient reason for excepting judgments of this kind from the general rule. There would be greater reason for excepting judgments or orders granting injunctions from the general rule than there would for so excepting judgments of ouster; but if it had been the intention of the legislature that such judgments or orders should be excepted, there would have been little reason in extending the right of appeal to orders granting temporary injunctions. If the effect of an appeal from an order of this kind was not to suspend it so that it would no longer bind the appellant, he could derive no benefit from an appeal therefrom. Before such appeal could be determined the case would, under ordinary circumstances, have been tried upon its merits, and a final judgment rendered.

But it is said that if a judgment of this kind could be suspended, the relator would be deprived of any

substantial benefit of his proceeding, for the reason that before the appeal could be prosecuted to a final determination the term of office over which the contention was being waged would have terminated. But this argument loses sight of the fact that the court would require such a bond as would amply protect the respondent. Beside, less hardship and uncertainty, not only to the contestants but to the public, would flow from the rule which allows the judgment to be suspended than from the contrary one. If the judgment is not suspended it may well happen that the person declared elected to the office may go into possession thereof and in a few weeks be compelled to surrender it by reason of a judgment of ouster in the superior court, and in a few months more be reinstated therein by reason of the reversal of such judgment of ouster.

Public policy will be best subserved by such a construction of the legislation as to appeals as will make the rights of appellants in all classes of cases as nearly uniform as circumstances will allow. When a general rule exists it should be applied to every case possible, and exceptions should only be recognized when they have been expressly provided for or are absolutely necessary to the protection of the rights of parties.

There is a suggestion in the majority opinion as to the right of the appellant to appeal from any judgment which may be rendered in the contempt proceedings. If by what is said it is intended to intimate that by reason of the fact that an appeal will lie from the judgment in such contempt proceedings, prohibition against the superior court should not be allowed even though it was proceeding without jurisdiction, I cannot agree to such intimation. To hold that a de-

fendant must obey a judgment which he is satisfied is of no force against him or take the chances of being punished by fine and imprisonment for violating it, if it eventuates that he is mistaken, is to establish a rule which may result in great oppression. A sensitive person might prefer to suffer in silence by reason of a judgment which he believed to be void rather than take the risk of being imprisoned for violating it, if it should afterwards be held to be in force. Hence the fact that the defendant may appeal from a judgment rendered in à contempt proceeding does not render such an appeal an adequate remedy. Beside, this question has been so often decided by this court adversely to the position intimated in the majority opinion that it should now be treated as *stare decisis*.